Appellate Department, Superior Court, San Bernardino

[Civ. A. No. 6.   May 25, 1953.]

ARMINEH HAYES, Respondent, v. FINANCIAL INDEM-
NITY COMPANY, Appellant.

Taylor Peterson for Appellant.

Wright, Wright, Green & Wright, Loyd Wright, Dudley
K. Wright and Loyd Wright, Jr., for Respondent.

MITCHELL, J.—This is an appeal from the judgment of
the Municipal Court of San Bernardino Judicial District in
an action brought to recover from an insurance carrier the

loss sustained by the plaintiff when her automobile was damaged by being upset.

The automobile was upset while being operated by plaintiff's minor son who had no driver's license.

The main question presented on this appeal is this: "Did the unauthorized use of the plaintiff's automobile by the plaintiff's minor son constitute theft?"

The plaintiff was the owner of an automobile, upon which she purchased from the defendant a policy of insurance.

In this policy the defendant agreed to reimburse the plaintiff for "Loss of or damage to the automobile—except by collision or upset—but including fire, theft and windstorm."

Other than this the plaintiff had no upset or collision insurance.

Accordingly plaintiff could recover from the company for loss due to upset only if this loss was caused by theft of the car.

In the complaint, paragraph IX, it is alleged that the automobile described in the insurance contract "was stolen and while so stolen was involved in a collision and wrecked."

FINDING OF TRIAL COURT

On this subject the trial court found as follows:

"9. That on the 21st day of September, 1952, the said Roy Hayes, minor son of the plaintiff, took and operated the said automobile of the plaintiff without the permission and/or consent of the plaintiff, either expressed or implied.

"10. That at the time and place of taking the said automobile the said Roy Hayes had no intention of permanently depriving his mother, the plaintiff herein, of the possession of or title to said automobile but did intend temporarily to deprive her of the possession thereof, and that while so driving and operating said motor vehicle without the consent, permission, authorization and/or approval of the plaintiff, either expressed or implied, the said automobile was wrecked as aforesaid."

As its conclusion of law the trial court found that "The taking of said automobile by the said minor . . . constituted a theft within the meaning of the policy of insurance . . ."

The trial court then awarded plaintiff the sum of $1,545.

Ordinarily the question as to whether or not a vehicle was used with the permission of the owner is one of fact, to be determined by the trial court. (*Mize* v. *Jorden,* 116 Cal. App.2d 301 [253 P.2d 702]; *Casey* v. *Fortune,* 78 Cal.App. 2d 922 [179 P.2d 99].)

The trial court is the sole judge of the credibility of the witnesses, and if there is any substantial support for a finding such finding will not be disturbed on appeal. (*Flemmer* v. *Monckton*, 73 Cal.App.2d 271 [166 P.2d 380].)

Appellant here makes no attack on the findings of fact with respect to the unauthorized use of the plaintiff's automobile by her minor son. However, appellant does attack the trial court's conclusion that the son's unauthorized use of his mother's automobile constituted a theft thereof.

## Definition of Theft

"Every person who shall feloniously steal, take, carry, lead or *drive away* the personal property of another . . . is guilty of theft . . . " *Penal Code, section 484.*

"Grand theft is theft committed in any of the following cases:

"1.

"2.

"3. When the property taken is an automobile . . ." *Penal Code, section 487.*

## Webster's Dictionary

"Theft, 1. Act of stealing; the felonious taking and removing of personal property, with intent to deprive the rightful owner of it;

"2. Larceny.

"Larceny, 1. The unlawful taking and carrying away . . . of personal property with intent to deprive the rightful owner of it;

"2. Theft

"Steal, 1. To take . . . feloniously; to take without right and with intent to keep wrongfully;

"2. To appropriate to one's self furtively."

"The present statute of this state in its definition of theft, includes . . . the several crimes of larceny and embezzlement." *Granger* v. *New Jersey Ins. Co.* 108 Cal.App. 290, 291, 293 [291 P. 698].

Joy-Riding. "Any person who drives or takes a vehicle not his own, without the consent of the owner thereof, and with intent to either permanently or temporarily deprive the owner thereof of his title to or possession of such vehicle, whether *with or without intent to steal* the same . . . is guilty of a felony . . . " *Vehicle Code, section 503.*

This section makes felonious the taking of an automobile with intent to steal it.

*To steal an automobile is to commit theft.*

This section also makes felonious the taking of an automobile *without* the intent to *steal,* i.e., without the intent to commit *theft.*

### FINDING NO. 10

The trial court found that plaintiff's son "had no intention of permanently depriving his mother of the possession of or title to said automobile . . ."

Does not this mean that the trial court found that the boy drove the automobile *without the intent to steal* or to *commit theft?*

If the boy drove the car *without* the intent to commit *theft* —can we legally conclude that he did commit theft?

If he merely borrowed it, without permission, intending to return it reasonably soon, can it be said that he stole it?

### REVIEW OF DECISIONS

■ A review of the reported decisions discloses that the great majority of the courts hold that to warrant a recovery by an insured owner under coverage such as we have here, there must be proof of an intent to steal on the part of the user.

The excerpts in the following pages will disclose the opinions of the several jurisdictions which have been called upon to consider the question.

### NEW YORK

A garage owner, without permission, used a car of another for his own purposes and while so engaged was involved in a collision. The owner sued his insurer under the "theft clause" in his policy.

In deciding that the mere use of an automobile without the consent of the owner did not constitute "theft" the New York Court of Appeals said:

"By Penal Law: 'Any person . . . who without the consent of the owner shall take . . . an automobile . . . and . . . drives . . . the same . . . for his own . . . use . . . steals the same and is guilty of larceny . . .' (Sec. 1293a Consol. Laws)."

"Apart from this statute, the misuse of plaintiff's car . . . would not constitute a larceny, since there was lacking the felonious intent to appropriate another's property permanently and wholly. *Parr* v. *Loder,* 97 App.Div. 218, 220, 89 N.Y.S. 823; *Ledvinka* v. *Home Ins. Co. of New York,* 139 Md. 434, 115 A. 596, 19 A.L.R. 167; *Michigan Commercial*

*Ins. Co. of Lansing, Mich.* v. *Wills,* 57 Ind.App. 256, 106 N.E. 725; *Phoenix Assur. Co., Limited, of London,* v. *Eppstein,* 73 Fla. 991, 75 So. 537, L.R.A. 1917F, 540; *Valley Mercantile Co.* v. *St. Paul Fire & Marine Ins. Co.,* 49 Mont. 430, 143 P. 559, L.R.A. 1915B, 327, Ann.Cas. 1916A, 1126; *State* v. *South,* 28 N.J.Law, 28, 75 Am.Dec. 250; *Regina* v. *Trebilcock,* 7 Cox Cr.Cas. 408; Pollock & Wright on Possession, p. 225.

"The courts below have held that . . . what is now larceny under statute is also theft under the policy.

"We hold another view.

"The problem before us is not one of statutory construction. It is one of the meaning of the contract."

" 'Unauthorized Use of Motor Vehicle' (the heading of the statute), prefigures an offense that is something less than theft as theft has commonly been known."

"Theft under this contract is theft as common thought and common speech would now image and describe it."

"One other consideration emphasizes the need for uniformity of meaning. . The policy does not limit its protection to casualties suffered while the car is in New York. Theft . . . in any other state are equally within its terms. This, without more, is sufficient to forbid a reading that would cause the risks to vary with the accidents of local laws. Neither insured or insurer can have believed that the same act would be theft if committed in New York, and a mere trespass or conversion if committed in Massachusetts or New Jersey. They spoke in terms so common . . . as to have a meaning everywhere.

"The judgment of the . . . Trial Term should be reversed, and the complaint dismissed." *Van Vechten* v. *American Eagle Fire Ins. Co.,* 239 N.Y. 303 [146 N.E. 432, 433].

"It is equally the settled law of this State that a policy of insurance covering 'theft, robbery or pilferage' does not include within those terms a violation of section 1293-a" (unauthorized use). *Block* v. *Standard Ins. Co. of New York,* 292 N.Y. 270 [54 N.E.2d 821, 822, 152 A.L.R. 1097].

### ALABAMA

"Clearly, under the great weight of authority, a temporary taking of the car . . . with intent to return it, not an intent to permanently deprive the owner of his property is not 'theft' within the policy." (Loss from theft, robbery or pilferage.) (Recovery denied.) *Home Ins. Co. of New York* v. *Trammell,* 230 Ala. 278 [160 So. 897].

"This is a suit to recover on a policy of insurance wherein the defendant insured the plaintiff's automobile against loss or damage by theft, larceny, robbery, pilferage or robbery.

". . . Terry (the owner) took the insured automobile to Willie Jenkin's garage for repair . . . an employee . . . took . . . the car . . . (for his own use, and while using it) Mr. East ran into the back of the automobile and damaged it.

."The collision was investigated by a highway patrolman. . . . No arrests were made."

"It is our considered conclusion that the evidence . . . in its most favorable light for the appellee (owner) only establishes an unauthorized use . . . (and) does not afford any basis for a legitimate inference that there was any intent . . . to steal the car . . . Reversed." *Bankers Fire & Marine Ins. Co.* v. *Terry*, 35 Ala.App. 233 [45 So.2d 324, 325, 327].

### KANSAS

" 'A felonious intent means to deprive the owner, not temporarily, but permanently, of his own property, without color of right or excuse for the act, and to convert it to the taker's use without the consent of the owner.' " *In re Mutchler*, 55 Kan. 164 [40 P. 283, 284].

### KENTUCKY

". . . the term 'theft' in a contract of insurance has no different meaning to 'theft' as usually defined. To constitute theft, it is necessary that there be a taking of the property . . . without the consent of the owner, coupled with an intention on the part of the taker to convert it to his own use and to deprive the owner of his property rights therein." *McKenzie* v. *Travelers' Fire Ins. Co.*, 239 Ky. 227 [39 S.W. 2d 239, 240].

### MAINE

The Supreme Court of Maine similarly said: "This is a case where the definite word 'theft', with meaning well understood for generations under our law, is opposed by the idea that its meaning should be here broadened to 'unauthorized use'.

"The referee having found no intent to steal, we are of the opinion that he was in error in holding that 'unauthorized use' was equivalent to *'theft.'* *Wheeler* v. *Phoenix Indem. Co.*, 144 Me. 105 [65 A.2d 10, 13].

### MINNESOTA

"There is no testimony to warrant the conclusion that Murphy intended to appropriate the machine to his own use,

or to deprive the owner of his property therein; but, on the contrary, it appears that . . . the most that was done, aside from its injury, was to use it in the course of a drunken escapade." *Travelers' Indem. Co.* v. *Fawkes,* 120 Minn. 353 [139 N.W. 703, 705, 45 L.R.A.N.S. 331].

## Missouri

"It is the established law of this state that where an insurance policy is open to different constructions, it is the duty of the court to give it that construction which is most favorable to the insured."

"However, we do not regard the word 'theft' as used in the policy herein as an ambiguous word. It is a word generally and commonly used and understood to convey the same meaning as the word 'steal.' To 'steal' is to commit a 'theft' in the usual and ordinary acceptation of the words.

"In order to have a 'theft' something must be stolen by a thief. The technical legal name for the act of 'stealing' or the commission of 'theft' is 'larceny', but there is no 'stealing' or 'theft' or 'larceny' unless the person committing the act shows an intention permanently to deprive the owner of the property . . . "

"*A consideration of the reasoning in many cases holding that there can be no 'theft' within the meaning of such a policy as we have before us without evidence showing an intent to deprive the owner permanently of his property,* AS WELL AS THE FEW CASES TO THE CONTRARY, leads us to the conclusion that the element of such felonious intent by Norton is absent . . . and we cannot properly hold there was a 'theft' . . . A holding that there was a theft in this case would be equivalent to branding Norton as a thief. We would not be justified in so holding in the absence of evidence from which it could reasonably be inferred that he entertained a criminal intent to deprive his employer of its truck permanently." *Eiswirth Const. & Equipment Co.* v. *Glenn Falls Ins. Co.,* —— Mo.App. ——[240 S.W.2d 973].

In the Eiswirth case, above, the insuring agreement was as follows: "Coverage D—Theft (Broad Form): Loss or damage caused by theft, larceny, robbery or pilferage."

## Missouri

"The insurance contract only covered a felonious asportation, and it is manifest that the taking shown was, at most, a trespass against which there was no insurance." *Bigus* v. *Pacific Coast Casualty Co.,* 145 Mo.App. 170 [129 S.W. 982].

## MONTANA

"The fact that the taking (of an automobile) was altogether wrongful, and that it was the intention of LeVasseur and Ellis to appropriate the car to their own use during the ride, and to that extent to deprive the owners of the use of their property, are not sufficient to constitute their acts larceny.

"They must have had a criminal intent—the intention to steal the car, without which the act of taking, however reprehensible and wrongful, amounted to a trespass or a civil wrong."

"Many other cases holding to this same view are collected in the notes in 25 Cyc. 45."

"Considered in the light of these rules, the facts stated do not warrant the inference that the car in question was taken by LeVasseur and Ellis with criminal intent to deprive the owners of it permanently, and therefore the car was not stolen, and this case does not come within the provision of the insurance policy . . . " *Valley Mercantile Co.* v. *St. Paul Fire & Marine Ins. Co.,* 49 Mont. 430 [143 P. 559, 560, 561, Ann.Cas. 1916A 1126, L.R.A. 1915B 327].

## OKLAHOMA

"The evidence is in substance without conflict. The plaintiff owned a delivery truck . . . The defendant . . . insured plaintiff against larceny, theft and pilferage; . . . a young employee . . . took the truck . . . went on a joyride . . . The truck was driven off the road and overturned . . . the truck was delivered by the highway patrol.

". . . he took the truck without permission of the plaintiff and against the specific instructions of plaintiff."

"In an action to recover for loss alleged to have been sustained under the theft provision of an automobile insurance policy, the burden is upon the plaintiff to establish by a preponderance of the evidence a taking and an asportation of the vehicle with the intent to deprive the true owner thereof.

"If no such intent existed but on the other hand there existed an intent on the part of the taker to return the property after a temporary use there can be no recovery." *Hanover Fire Ins. Co.* v. *Western Bank & Office Supply Co.,* 198 Okla. 377 [178 P.2d 883].

## TEXAS

". . . appellant . . . broke in, and took . . . automobile . . . ran the automobile some 50 or 60 miles . . . took the

machine, on the same night, back near the owner's house and left it in an alley . . . ''

''. . . the taking did not in law constitute theft . . . '' *Smith* v. *State*, 66 Tex.Crim. 246 [146 S.W. 547].

''. . . in the absence of any felonious intent to steal, we are of the opinion that the loss complained of was not caused by theft, larceny, robbery or pilferage within the meaning of the policy sued upon.'' *Royal Ins. Co.* v. *Wm. Cameron & Co.*, (Tex.Civ.App.) 184 S.W.2d 936, 937.

### VERMONT

The Supreme Court of Vermont, in a similar situation held as follows ''The rule in the great majority of states may be stated in this manner. To warrant a recovery on a policy insuring an automobile against theft there must be more than a wrongful taking; the taking must be with the *intent to steal*.

''The intent to steal is a necessary ingredient of the offense and may be inferred from the facts and circumstances of the case.'' *Rainville* v. *Farm Bureau Mut. Auto. Ins. Co.*, 117 Vt. 37 [83 A.2d 599].

### CALIFORNIA

Our District Court of Appeal, in 1930, said: ''. . . it has been generally held that the words 'theft', 'robbery' and 'pilferage' are words that are well understood and that they are used in insurance policies in their common and ordinary meaning. (*Royal Ins. Co.* v. *Jack*, 113 Ohio St. 153 [148 N.E. 923, 46 A.L.R. 529].)

''Theft involves the idea of a knowingly unlawful acquisition of property; that is, a felonious taking of it from one who has both the actual possession and the apparent right of possession. (*Stewart* v. *Home Fire & Marine Ins. Co.*, 2 N.J. Misc.Rep. 515 [124 A. 773].)''

''The words . . . must be deemed to have been used in their general and popular sense rather than with specific reference to the precise definition of a criminal statute. (*Hill-Howard Motor Co.* v. *North River Ins. Co.*, 111 Kan. 225 [207 P. 205, 24 A.L.R. 736].)''

''The present statute of this state in its definition of theft, includes . . . the several crimes of larceny and embezzlement.'' *Granger* v. *New Jersey Ins. Co.*, 108 Cal.App. 290, 291 [291 P. 698].

''. . . the test of law to be applied to these circumstances for the purpose of determining the ultimate fact as to the man's guilt or innocence is, Did he intend to permanently

deprive the owner of his property? If he did not intend so to do, there is no felonious intent, and his acts constitute but a trespass." *People* v. *Brown,* 105 Cal. 66, 69 [38 P. 518].

### Minority View

#### District of Columbia
(Municipal Court of Appeals)

". . . a youth (sic) of the age of three and one-half years entered the car so parked and caused it to start down the hill . . ."

"a child under seven years of age is held incapable of forming a criminal intent."

"Here . . . there is nothing from which we may infer a specific intent to deprive the owner of the automobile."

"To one who is a scholar and familiar with the history of the barbaric tribe whose depredations perpetuated its name in our dictionaries, to one 'skilled in the niceties of language', the point (no evidence of intentional injury) may have weight." *Unkelsbee* v. *Homestead Fire Ins. Co.,* (D.C.Mun. App.) 41 A.2d 168, 170.

Two of the judges of this court held that the owner should recover from the insurance company because the child's "acts were the proximate cause" of the injury.

The only discussion of the subject of theft is found in the dissenting opinion in which the following appears: "I am unable to agree with the majority."

"The word 'theft' when used in a policy of this type is not to be confined in its meaning to the common-law definition of larceny, but . . . it is not to be given a meaning contrary to the understanding of the word in common speech and thought.

"No one, in my opinion, would say or think that the action of the child . . . was even akin to the common conception of theft."

"I see no reasonable basis for holding that the collision was caused by theft within any meaning of the word, and I understand the majority to agree with me in this view." *Idem.*

"The reasoning of this New York case, and of others so holding, (against theft) is based upon the theory that in common thought and common speech theft means a taking and carrying away of the property of another with intent permanently to deprive the owner of his property and nothing more. This is at best a legalistic misconception. The common thought

and common speech meaning of theft is that which prevails, not among lawyers and judges, but among people (who) . . . have never heard of this old common-law definition.''

''It is true . . . that the numerical weight of authority is opposed to the position which we take.'' *Pennsylvania Indem. Fire Corp.* v. *Aldridge,* 73 App.D.C. 161 [117 F.2d 774, 133 A.L.R. 914].

### Colorado

''It should be observed that the title of the law of 1919 is an act relating to and concerning 'the theft of automobiles.' ''

''We do not regard the law of 1919 (taking an automobile for temporary use) as making an essential change in the offense.''

''The word .'theft' has a very general meaning, and we are of the opinion that . . . the act in question should be held to have been a theft for the purpose of this suit.'' *James* v. *Phoenix Assur. Co.,* 75 Colo. 209 [225 P. 213].

### Kansas

''When we reflect that . . . the meaning of . . . recovering stolen automobiles are so efficient, the likelihood of the owner of it permanently deprived of it through trespass, theft, larceny or otherwise is so remote that it would scarcely be worth an owner's while to insure his car against 'theft' if the policy would only cover a case where he is permanently deprived of it . . . in the common practice of automobile thieves there is no intention of depriving the owner of it permanently . . . (but to) abandon it before the peril of his incriminating possession of it leads to his undoing.'' *Baker* v. *Continental Ins. Co.* 155 Kan. 26 [122 P.2d 710, 712].

### New York
#### (County Court)

This is an opinion of the trial court in Erie County, New York, in which the trial court took cognizance of the rule established by the New York Supreme Court but, because the jury found that the taking of the automobile was a theft, this trial court said:

''Seven years have elapsed since that pronouncement.'' (*Van Vechten* v. *American Eagle Fire Ins. Co.,* 239 N.Y. 303; 146 N.E. 432.) ''

''Jurymen are . . . in a better position than a court to divine common thought and define common speech . . .''

"The decision of the court (trial) in this case is grounded in the belief that the future possibility indicated in the Van Vechten Case has fructified into a prognosticated frumentary." *DeLong* v. *Massachusetts Fire & Marine Ins. Co.,* 142 Misc. 654 [256 N.Y.S. 300, 301.]

Manifestly the great weight of authority is in support of the holding that a mere temporary use, although unauthorized, where there is no intent permanently to deprive the owner of his property, does not constitute theft.

Since plaintiff may recover only if her automobile were damaged as a result of theft we need not consider any of the other points discussed in the briefs.

The judgment is reversed.

Hilliard, J., and Coughlin, P. J., concurred.